Our final argument this morning is 23-1672, Le Doux v. Western Express. Mr. McNew? Good morning, Your Honors. And may it please the Court, I'm Kyle McNew. I represent Mr. Le Doux. I'd like to devote my oral argument time to the first and second issues presented. Of course, if the Court has questions on the third, I'll be happy to take them, but otherwise I would rest on my briefs on the third issue presented. I'm going to start with the exclusion of Mr. Napier, the Federal Motor Carrier Operations Expert. Rule 702 says that expert testimony is proper when it will be helpful to the trier of fact. So the trial court abused its discretion when it ruled that, quote, the jury properly instructed did not need Mr. Napier. That's not the standard. The standard is whether it will be helpful. Federal courts around the country have repeatedly recognized that trucking expert testimony is helpful to the jury because of the significant differences between both the equipment and the training. And this Court has explicitly recognized that expert testimony of this nature is sort of at the far end of the helpfulness curve where the standard is defined by the specific. Here, that's a reasonable commercial driver rather than the general reasonable person. That's from the Copp case that the district court below relied upon. The court instructed the jury that Mr. Worthy had to adhere to a specialized standard, a specialized duty, which the Supreme Court of Virginia has recognized creates a expanded duty for commercial drivers and also permitted a claim to go to the jury that's premised upon the specialized training and knowledge that Mr. Worthy had as a commercial driver. Did the judge's jury instructions compensate for the lack of that expert? I don't believe so, Your Honor, because all the judge instructed the jury on was the standard. And not all FMCSR regs are the same. So some FMCSR regs tell the driver exactly what they have to do. If your vehicle is disabled, you have to put out reflective triangles. I don't need an expert to interpret that standard to say that you have to put out reflective triangles. But here, the standard that the court instructed the jury on, 392.14, is much more context specific. It tells them that extreme caution shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, etc., adversely affect visibility or traction. So that's really open to interpretation as to what is a hazardous condition that triggers this extreme caution standard. There was a big fight below about whether these conditions were hazardous. There was a dispute as to how long the rain had been going on leading up to the crash, how heavy it was. That's where an expert can come in and say in the industry That's a question, I'm sorry to interrupt, that's a question as to the timing of the rain, not necessarily the obvious proposition that if it's raining, you need to be a little bit more cautious. And if you're a truck driver, you have to, driving a truck is not the same as driving a Prius. So I think there's two pieces to my answer to that question. First, Your Honor, of course, there was a question of fact that's solely for the jury as to what was the nature of the rain and when. But under the plaintiff's evidence, it was these were the conditions. And an expert can come in and testify, okay, if those are the conditions, that's the beauty of an expert, is you get to ask them hypotheticals. You get to say, okay, assume these facts to be true, would that qualify as hazardous conditions? And if so, what would a reasonable truck driver be trained to do? Now, let's say that it's a different set of facts. Let's say it's the defendant's version of things. Would that still qualify as a hazardous condition? Well, if so, why? You know, based on commercial trucking. So that's the answer to the first part of your question, Your Honor. The second part of it is I just don't accept the premise that it's just obvious, right? At a very high level of generality, yes, in rain, slow down. How much? How much should I slow down in my Jeep versus how much should Mr. Worthy slow down in his 18-wheeler? Mr. Napier was disclosed to say that under the extreme caution standard, truckers are taught to slow down by at least a third of the posted speed limit or more. I have no idea how a jury would know that other than through an expert. Do they tell them to get in the right lane? Tells them to get in the right lane if at all possible and stay there. I mean, is that part of it? Yeah, Mr. Napier's report explicitly says that. This decision is reviewed here for abuse of discretion. Yes, Your Honor. And so I wrestled with whether to lead. It's an uphill battle for you. It is. I wrestled with whether to lead with that one because of that very reason. But I think analytically it makes sense to lead with it first because of the impact it has on the negligent hiring issue that we'll talk about in a minute. But I also think that it is – put it this way. Cop versus skirm, the case that the district court relied upon below, that was an exclusion of an expert question. That's reviewed for abuse of discretion. And this court reversed for the exact same reasons that I'm arguing here. I think cop versus skirm provides an excellent blueprint for this court because it recognizes the inherent unfairness. In a situation like this, when you have a specialized standard, a cohort-specific standard, a standard that only applies to a certain group of people that isn't the jury. There it was law enforcement officers. Here it's commercial drivers. And this court recognized the inherent unfairness that when you chop them off at the knees and take away their expert, they're left with just having to take the word of the defendant as to what the specialized training requires. And that's exactly what happened here without an expert to explain to the jury not just the what but also the why, not just the slowdown but the how much and why. And not just the get off your cruise control but when and why. Without that, all you're left with is hoping that the adverse party gives you what you need to prove your case, to advance your theory of the case. That's inherently unfair. This court recognized that in cop versus skirm. And that's what was left with here. All they could do was read the deposition, the discovery deposition of Mr. Worthy and hope that that was good enough and then rely on argument of counsel as to what satisfies and what's required under the specialized standard. Do you have any witness testimony, erratic driving, failure to brake sufficiently in advance? No, there was no other, not in terms of how a commercial driver is supposed to do it. Right? I mean, the witnesses were eyewitnesses to the crash. You know, people that were also driving in the same conditions, whether a little bit before, a little bit after. Did they testify as to what they did when the window or wall of rain came down? Yeah, and there was a dispute in the testimony about that, about when the window came down. But again, I think the point, the meta point there, Your Honor, is they were all driving passenger vehicles. None of them could speak to, I was driving my 18-wheeler and here's what I did. And I didn't cream anybody or I also rear-ended somebody. It was, it's apples and oranges. I think, and Judge Flanagan can correct me if I'm wrong, but I thought what she was getting at was, your expert may have been able to say all the things that you just described a moment ago, but if you've got no evidence that suggests that the driver did things contrary to what the expert suggested, that's a problem. Oh, there was ample evidence based on the downloads. Mr. Stewart was another expert. He's Stewart. He talked about here's where his speed was at given times prior to, you know, given times prior to the crash. There were witnesses who say it was raining for a long time prior to the crash. So there are witnesses that provide, certainly witnesses that provide that factual predicate upon which the... Did they come in? Oh, yes. Yeah, they came in, but then there was no expert testimony to allow the jury to link up. What am I supposed to do with that? So the risk is that the jury is going to be left thinking, what would I have done in these circumstances? And that's just not the question. The question is, what should a reasonable commercial driver have done in those circumstances? Without an expert, that was impossible to prove on the straight negligence claim. It's impossible to prove the punitive, willful and wanton negligence claim that's explicitly premised upon specialized training, specialized standards. I'd like to move on to the negligent hiring piece, if I may. The Supreme Court of Virginia has explicitly disapproved of, and I'm quoting here, subjecting the tort of negligent hiring to factors that bear upon the separate concept of employer liability based on responding at Superior. That's a quote from the Victory Tabernacle case. And that's because negligent hiring is an independent tort that is distinct from vicarious liability because they differ in focus. That's from Church of God. That's from interim personnel. That's frankly from every Supreme Court of Virginia decision that has discussed it. It was therefore error for the district court to allow Western Express' stipulation that Mr. Worthy was acting in the scope of his employment, a factor that bears only upon responding at Superior to negate the independent, distinct claim for negligent hiring. Nor does the retrospective finding that Mr. Worthy was not negligent. Of course, we dispute that finding because the jury didn't have an expert to explain to the jury why he was negligent or to allow the jury. The jury found he wasn't negligent. The jury found he wasn't negligent, and we dispute that premise. I don't undermine your claim completely. Because the employee's negligence is not an element of a negligent hiring claim in Virginia. The jury instruction would not say, would not require the jury to find that the employee was negligent. Is it a strict liability? No, there is a causal connection. The basis of negligent hiring liability is the employer's hiring or retention of an unfit or incompetent employee. And what happened has to have been related to that unfitness or incompetence. So it's focusing on the quality, the characteristics of the employee. How is related to different from proximately caused or negligence? So I'll take proximately caused, I won't take negligence. So there is a proximate causation requirement. They agreed with us below. They said it's a different, the issue is it's a different proximate causation. They agreed with us below on this. So an example, let's say you had an employee who had a ton of prior DUIs. Probably shouldn't have been hired. If you're a trucking company, probably shouldn't hire that guy. But let's say the crash occurs that had nothing to do with driving under the influence. The driver wasn't under the influence. The truck driver was speeding or something. There wouldn't be a negligent hiring claim there because the incompetence or unfitness of which the employer knew or should have known has no relation to what happened, has no causative relation to what actually happened. So the unfitness, the incompetence has to track to what happened. But the jury doesn't have to find, the jury doesn't have to decide that the employee was negligent or not. They have to decide that the employee was unfit or incompetent. And that that unfitness or incompetence was a factor, was a cause, was a proximate cause. I'll go there with your honor, of what happened. So what's the evidence to support that, absent a finding of negligence? The evidence upon which in this case, upon which the jury could have found that Mr. Worthy was incompetent or unfit. I think a lot of it goes to, in my mind, the most compelling piece of it to me. And I won't characterize it for y'all. But his record gives you a reason to think this is a guy who just doesn't listen to direction, who doesn't think he needs training, who thinks he knows what he's doing. So he knows better. And so therefore, despite what the cruise control warning system says about when to use it and when not, he knows what he's doing. So that is the unfitness or incompetence that Western Express absolutely knew about. Because they'd fired him for it a couple times before. If the evidence was that he should have stopped using his cruise control earlier, didn't, but if that wasn't the cause of the accident, why does it matter that the company negligently hired him because he wasn't attentive to directions? I think that would be a jury question as to whether that was or was not a cause of the accident. The jury, I don't think we know on this verdict form, on this record, whether that, what the jury thought about that. Having trouble distinguishing between related to and approximately caused to. They just seem to overlap so much that in this context, anyway, it wouldn't have made a difference, having that additional claim. I don't think we can possibly know that, Your Honor. And I look at it this way. Let's say that the district court hadn't gone out on its own, hadn't made this sua sponte decision, and had let both, and I'm into my overtime. May I answer the question? As long as I'm asking questions, you can keep talking. Let's say that the district court had let both of them go, had let both claims go to the jury. You put on your evidence and the jury comes back with a verdict. Was Mr. Worthy negligent? No. Was Western Express liable for negligent hiring? Yes. As they agreed below, that would not be an inconsistent verdict. You wouldn't set that verdict aside as inconsistent because the proximate causation analysis is different. The proximate causation analysis for a negligent hiring claim is based on the employer's hiring or retention of an unfit or incompetent employee. And what happened in the crash, was that unfitness or incompetence a proximate cause? The jury never has to characterize that as negligence. The only time the jury has to decide whether the employee was negligent, the only time the jury is instructed on the employee's negligence, is in the direct negligence claim against the employee. Yeah, I'm just having trouble explaining or having a jury understand how the proximate cause would be different on those two claims. Again, I think it's because they're focusing on different points in the chain. And so, I get it's a somewhat existential question, for lack of a better term. Plenty of other courts have gone there, right? I mean, the Supreme Court of South Carolina, the Supreme Court of Kentucky, plenty of other courts have recognized how that can happen. It's pretty well established in Virginia law, isn't it? This existence of this cause of action. Absolutely, Your Honor. It is very well established. Here's my big problem with what the district court did. The district court relegates negligent hiring to a second class citizen of Virginia law. Sort of a break glass in case of emergency cause of action. Not an independent, fully viable cause of action. And everything in Virginia case law points the other way. It says it is a viable cause of action. It is a recognized cause of action. Any question about that, look at the Victory Tabernacle case where they say as far back as Davis v. Merrill, we recognize this as a viable cause of action. Sit down. So, relegating... I don't think the district court went that far. You obviously disagree with that, but I think his decision was premised on the notion that in the absence of some link to the employee's unfitness, the classic example being someone who is a convicted sex offender is hired to work at a place of employment or a school and commits yet another sex offense in that context. Clearly, that's a different ball of wax. You've got a legitimate negligent hiring claim in Virginia. I think that's what the district court was getting at. The problem here is that the jury having found no proximate cause via its analysis of the negligence claim, the district court, and you disagree with this, decided that negligent hiring has nothing to do with this case. Respectfully, your honor, I think your chronology is incorrect there. The district court kicked the negligent hiring claim. I know he did. So, the district court didn't make the finding that you're talking about. That's what they asked the district court to find. That was the premise of their motion for summary judgment. A jury did. A jury found that he was not negligent based on the evidence that was permitted at trial. One of the elements of negligence is proximate cause, right? Some act on the part of Mr. Ledoux that caused the accident. Yeah, it's the failure to act as a reasonable person. It's not based on were they fit or unfit, competent or incompetent. In other words, somebody could be fit or unfit and incompetent but not negligent? Absolutely. And the opposite is true. I think I'm a very competent driver. I think I'm a very fit driver. I can still negligently cause a crash. So, that's the major point here is a negligent hiring claim focuses on the quality and characteristic of the employee. Not on the objective reasonableness of their conduct. I think it's a nuanced distinction but it's a very marked distinction. And it's one that has been recognized by multiple courts throughout the country. And we think that Virginia law clearly tracks those courts. I'd like to preserve whatever time I have left for rebuttal. Thank you, Mr. McNeal. Ms. Monday. Good morning. May it please the court. I'm Monica Monday on behalf of Western Express and Urban Worthy. Ledoux had a fair trial and an opportunity to prove that Mr. Worthy was negligent. But after hearing all of the evidence, the jury found that Mr. Worthy was not negligent. That verdict means that the negligent hiring issue is moot. An employer is not liable for negligent hiring unless its employee commits some wrongdoing that's connected to the plaintiff's injury. That has been the law of Virginia for over 100 years. Ledoux tries to expand the tort of negligent hiring beyond its purpose, which was to serve as an alternative claim when vicarious liability is not available. And without negligence and proximate cause, what negligent hiring becomes is a strict liability tort. You say it's moot because of the verdict? Correct, Your Honor. Correct, Your Honor. That's right. And because we've cited a number of cases in our brief, Virginia has long held that you need the liability, some type of wrongdoing, on the part of the employee for there to be a causal nexus in the case. That's the Davidson's Administrator case. And the Supreme Court has said the same since then. But in that case, the court said, the unfitness must result in a specific act of negligence or wrongdoing for liability to attach. And there can be no question in the Davidson's Administrator case what the Supreme Court meant. Because there was an instruction that was given to the jury in that case that would have permitted the jury to find the employer liable for having an unfit employee without finding that the employee was negligent. And the court actually said that instruction was improper and said when the case went back for a retrial that that claim, the negligent hiring claim, should not be part of the case. The victory tabernacle doesn't say anything differently. And in their reply brief, Mr. Ledoux cites that case for saying that negligence is not, that you don't need to prove negligence for a negligent hiring case. But what we were dealing with in that case was a willful tort, an intentional tort, the rape of a 10-year-old girl repeatedly by a church pastor. So we weren't dealing with negligence in that case. The issue was willful conduct. And so what the court said there was it still said you need to have some type of wrongful conduct. But what the defendant was pressing in that case dealt with scope of the employment. That was the big issue in that case, scope of employment was disputed. And I think there was an observation earlier that that's typically where we see negligent hiring, where you're dealing with criminal conduct or intentional torts where the real question is, is the employee in or outside of the scope of their employment? And here it was admitted. And Mr. Ledoux has not identified any Virginia case where an employer was liable for negligent hiring when its employee didn't commit some type of wrongful act. And otherwise, if we're going to hold employers liable for whatever an unfit employee does, what we're going to have under that claim is negligent hiring. I'm sorry, is strict liability. And the Supreme Court of Virginia has never said that negligent hiring is like strict liability. Instead, like in Davidson's administrator, it said exactly the opposite. Now, so we don't believe that the court needs to reach the question, the interesting question of Virginia law that's presented, which is what happens to a negligent hiring claim when you have an admission of agency under the vicarious liability claim? One of the examples that Mr. McNew gave, and I hope I'm summarizing this correctly, was he painted Mr. Ledoux as someone who just doesn't and is unwilling to pay attention to rules and regulations, and he specified the cruise control issue as one. He just, you know, he goes his own way. And the jury should have been entitled to consider that with respect to negligent hiring. I mean, I'm having trouble tying that to what happened in this case, but maybe you can explain it to me. I don't think that, I think that your Honor's concern is well taken. And I think this goes to the sufficiency of the negligent hiring claim itself. And if I understand your Honor's question correctly, and then I can address sort of the expert issue, which may also be related to your question. But I think the question that we need to ask is, because when you're talking about negligent hiring, the question is what is the propensity that we're talking about? It's supposed to be some kind of unfitness, some kind of dangerousness, because you're not permitted as an employer to expose the public to a dangerous employee when you knew or should have known that they were dangerous. So what propensity are we talking about? And what you heard today, I believe, from my colleague is, well, he just didn't like to follow rules. Okay, well, you know, what does that have to do with this particular accident? I don't think that's the kind of nexus that is required. And I think this goes to Judge Flanagan's question earlier about unfitness and what are we talking about when we're talking about unfitness versus negligence. And your Honor, I think that's where foreseeability comes in. No question, I think both sides agree, when you have negligent hiring, whatever it is that the plaintiff is complaining about has to be something that the employer should have been able to foresee based upon the characteristics or the past behavior of the employee. What is it here? Well, we learned in argument that the company has fired the driver at least twice previously. Well, and your Honor, I must say there's a factual dispute about that. But let me go to what we're talking about here. Because, you know, whether you've got a traffic infraction when you're driving your car or whatever, I think what we're talking about here is, did this employer know or was it foreseeable that this accident was going to happen because of some fault by, you know, Mr. Worthy, which of course we know the jury said he wasn't at fault. But what we have is the record shows is that he hadn't had an accident in his commercial vehicle for a number of years, nor do I think he had, well, that he was at fault for. So what we're talking about here is what is going to happen if an employer can be responsible for negligent hiring on these facts, where you have an employee that's got some infractions on a driving record but nothing that specifically made it foreseeable to the employer that this particular accident was going to happen. It's not like, and I think my colleague also used this example. I had this one as well. If he had had two DUIs and then he went out and drank and caused this accident, that's a negligent hiring claim. Judge Dee, I was asking you about the cruise control. You haven't said a word about that. Yes, Your Honor. Thank you. Thank you for reminding me about that, yes. And so with the cruise control… What was the cruise control being? What was the speed it was supposed to be fixed at? Well, Your Honor, the speed limit in the area was… By this driver. What was he running at? He was running at 65. 65. And so, but it wasn't, I believe that the evidence shows that it wasn't, you know, how speed control works. That your actual speed could be less or more depending upon… It was a rainstorm. Terrain and, yes. He was running in the left lane. Right. And so here what happened is the plaintiff did have some evidence that, and this came from his other expert who was admitted, that he shouldn't have been using the cruise control at the time because it was raining. And, but that evidence doesn't, that doesn't really say, we don't have a case in the past where he didn't use cruise control before and he caused an accident. There's no, there's, the nexus is simply not there. Just to say this is a guy who doesn't like to follow rules, is that going to expose an employer to liability for every single rule he's going to violate? That, I mean, that doesn't make any sense. Plus, the jury said he didn't violate any rule. He wasn't negligent. That's what the jury verdict said. So I guess turning to the, well, I guess before I turn to the expert issue, I did want to say one more thing about the, I think, Judge Diaz, you had asked a question. The expert would have said he shouldn't have been driving that fast. Correct, Your Honor. Correct, Your Honor. Which is why there's no error in the decision that the district court made to exclude their expert, Mr. Napier. There was abundant other evidence that came in as to all of these points. And I think what you didn't hear earlier today is that the plaintiff had another expert, Mr. Stewart, who was an accident reconstruction expert. And that expert came in and he provided the evidence that they're complaining Mr. Napier was excluded from providing. And that expert said that he testified about the extreme caution duty that the jury was instructed on. And, yes, Your Honor, Judge Flanagan, the jury was instructed on the extreme caution duty. And then he also testified that he shouldn't have been using his cruise control and that if he had braked earlier, that he would have been able to stop in time to avoid the accident. So everything that they are complaining about, that Mr. Napier wasn't able to get in, came in through Mr. Stewart. So that evidence was before the jury. And, for example, even Judge King, I think you mentioned earlier the right-hand lane. Well, he was in the right-hand lane. So Mr. Napier was going to say we should have been in the right-hand lane. He was in the right-hand lane until the very end. I thought you were running in the fast lane. No, Your Honor. Not until the very end when he tried to avoid the collision. The wreck was in the slow lane. In the left, correct, Your Honor. In the left lane. Yes, when he, correct. But he was in the right-hand lane up until that point. But the wreck was in the fast lane. Yes, that's correct, Your Honor. He ran into the back of him. Correct.  So the – Would it have been an abuse of discretion to admit the testimony of Mr. Napier? I think the judge had the discretion either way. It certainly would have been cumulative. You know, I think it would have been cumulative to admit both, the testimony from both experts. But the district court has such discretion on these particular issues, and there's certainly no abuse of discretion that's been identified here. And I also want to mention, too, I think that the main argument – the expert had unique experience with respect to truckers as opposed to the other fellow who might just have been a generic accident reconstruction expert. Disagree, Your Honor. And with that, I believe that Mr. Napier had not driven a tractor-trailer in about 20 years. So he was touted as an industry expert. I don't think there was anything unique he was going to offer. Plus, we've cited cases from the Supreme Court of Virginia and even from a district court that jurors understand the characteristics of tractor-trailers. They know they're heavy. They know they're big. They know they're heavy, hard to maneuver. That's in the Slye v. Commonwealth case from the Supreme Court of Virginia. They also know that rain makes roads slick, and that comes from the Virginia Supreme Court case White v. Southern Railway. The jurors know these things. The jury didn't need – The 91 is full of big trucks going by. It does, Your Honor. And, of course, this was a pileup involving a number of vehicles. It's actually very similar to the Pitt, Ohio case where there was a trucker-driver encountered trucks and other vehicles in the road. It was foggy conditions. And in that case, the court said, you know, it's for the jury to decide. It's within the jury's common knowledge what you should do when you approach that. And the jurors understand that, you know, what the characteristics are of a tractor-trailer. And – Sorry. No, I'm sorry, Your Honor. Is it fair to say that you were pretty surprised when Judge Moon knocked the negligent hiring out for the reason that he did? I think that's fair, Your Honor. Yes, we thought that, quite frankly, that a very strong argument that we had was that what I've discussed earlier was that there really just wasn't sufficient evidence of any kind of unfitness that our client should have foreseen. Instead, he knocked it out on how he understood the law worked, and he wasn't right. I think that he was right, Your Honor, for just a few reasons. And, again, I'm not sure it matters because – Because you're in this envious position of having received a verdict of no negligence, and you're building on that to go backwards, on the negligent hiring claim to say that it was the right thing not to send it. But the judge made an incorrect decision under the law. As I understand it, he dismissed the negligent hiring claim solely on the basis that the defendant conceded Worthy was acting within the scope of his employment. But we all know the Supreme Court of Virginia allows both claims to go forward. Well, Your Honor, let me address that specifically. Those cases where the Supreme Court has allowed both claims to go forward have only been when vicarious liability is not available. The Supreme Court, no side has been able to identify a single case where vicarious liability was either not disputed or not at issue where only the vicarious liability claim could go forward. They don't exist. And that goes really to the roots of how negligent hiring arose in Virginia. And it arose as an alternative claim when vicarious liability wasn't available. And there's a great discussion of this in the Victory Tabernacle case. And the Supreme Court of Virginia said, negligent hiring enables plaintiffs to recover in situations where responding at superior scope of employment limitation previously protected employers from liability. So it grew out of the fellow servant rule, which was the rule before the Workers' Compensation Commission Act came into effect and permitted an employee to sue based upon a tort committed by a co-employee. But if the law was so clear, then why was the, except for Judge Moon's sort of light bulb going off in his head, why were, I don't, did you try this case? No, Your Honor, I did not. Okay. So it appeared that both claims were going to go back to the jury, right? But for Judge Moon's intervention. Well, I think, Your Honor, he did not actually expressly rule on the substance of the argument that we had made in terms of whether there was sufficient evidence. I think his opinion reflects that he assumed, assuming that it would go forward, but he never made an express finding with regards to that. But also, too, I think we go back to, in addition to the fact that Virginia only really has recognized this as being an alternative claim when vicarious liability is not available, and here it is available, we also have the question of, I think Judge Diaz, your question as to why does this even matter? I mean, what was the harm to Mr. Ledoux? And, of course, there was, Judge Moon asked Mr. Ledoux's counsel that. And, in truth, there is no harm. It was essentially a duplicative claim. The damages were the same. There was no separate damages calculation or injury. There was no different injuries suffered depending upon the two claims. Well, it's not duplicative if somehow there's a different standard with respect to proximate cause. Agreed, Your Honor. Agreed, Your Honor, but there's a total overlap on proximate cause. And the Supreme Court made that clear in the Davidson's case. The other point, too, is that for the negligent hiring claim, there was no punitive damages claim. There was a punitive damages claim on the vicarious liability claim, and that one was against only the employee, Mr. Worthy, not against Western Express. So, in fact, and not only that, but the negligent hiring claim is harder to prove than a vicarious liability claim. It's not an easier claim. You've got to prove that you've got an unfit employee, that the employer, you know, was able to foresee that that, whatever that unfitness was, was going to cause this accident, that it was going to be a harm to the public, and then you have the other issues about trying to actually show that there was some wrongdoing by the employee. That's the harder claim. So there was nothing that Mr. LeDoux lost by virtue of Judge Moon's ruling. And, in fact, what he got is he got an opportunity to prove his punitive claim because that punitive claim he didn't have in the negligent hiring claim. And here— You weren't trying to help him out by knocking that claim out, though. You were trying to help yourself. Your Honor, I think what the district— You said it was easier for him. You represent him. Well, I think it is an easier claim, Your Honor. Negligent hiring, it's a tough claim to prove, particularly when you're in a negligence— You weren't there to act in his interest. I know, Your Honor. I don't want to help him at all. No. No, I completely agree. But, yeah, I mean— You represent the truck. That's exactly right. But, you know, they couldn't even prove negligence before this jury. How were they going to be able to prove that this was such a dangerous employee that under their theory, the employer should have fired him? You must be surprised by the verdict. No, Your Honor. I think— And it's a really unusual case because the jury had at its disposal a video of the accident. There was a video. And so the jury had some of the best evidence you could possibly have. It had abundant eyewitness testimony. And what happened is our driver ran into a wall of water and there were already cars in front of him stopped. I think everyone was taken by surprise by the weather. And that's the way the jury resolved the case. The jury simply found he wasn't negligent and he didn't cause the plaintiff's injuries. And that resolves the case. We would ask that the court affirm. Thank you, Ms. Fundy. Mr. McNew. A lot of stuff to try to hit. So, first, they rely upon the Davis Administrator case to say that, well, the Supreme Court has said it has to be, I think they quoted it as, there has to be, for proximate causation, the employee's negligence or wrongdoing must be shown. That's a misquote of Davis' Administrator. It says negligence or incompetency. Davis' Administrator is the only case in Virginia that even references the employee's negligence when discussing a negligent hiring claim. But it says negligence or incompetency. If negligence was the through line, if negligence of the employee was the proximate causation through line, they would have just stopped at negligence. They say negligence or incompetency. This is quoted at page 13 of their brief, that it's negligence or incompetency. So it's a wider aperture than just negligence. It focuses on the character of the employee, unfitness, incompetence. Different courts have, different cases have framed it differently. But all of them focus on the character, the subjective competency of the employee, whereas a direct, a negligence claim against the employee just focuses on the objective reasonableness of their conduct. So they make the point, Judge King asked them if they were trying to help us out by trying to kick out the negligent hiring claim. And they said, you know, because the straight negligence claim against Mr. Worthy is just so much easier. I respectfully suggest it's impossible if you don't have an expert to come in and explain why what he's doing is wrong under the appropriate standard. So all of this discussion is premised upon a valid and unattacked verdict on Mr. Worthy's negligence. The verdict was, they were significantly hamstrung. They referenced that there was a video. There was a video 10 seconds before the crash. What Mr. Napier would tell the jury, what a motor carrier expert will tell a jury is that truck drivers are required to think more than 10 seconds ahead. So here's what the jury doesn't know is what was going on in the preceding 10 seconds and in the preceding 10 seconds. He would have told the jury that a truck driver, this is in his report, he would have told the jury that a truck driver is trained to look a quarter of a mile ahead to identify potential hazards because that's the whole point. In my little car, I can react to hazards. A truck driver has to react to potential hazards because once it's a hazard, it's too late. And the jury instructions didn't? Never touched on any of that. So that is? I have it cited here. Supplemental Appendix 45 is where he has to scan ahead by a quarter of a mile. I didn't learn that in driver's ed. I didn't learn that I have to look ahead a quarter of a mile. That's something that truck drivers are taught. There's no way a jury knows that without an expert. So the underlying premise that they base the main part of their attack on the negligent hiring claim on, that, well, it's all absolved by this finding of non-negligence, is just wrong because the jury didn't have the evidence it needed to make a proper determination of negligence or non-negligence. On the negligent hiring piece, they continue to say that it's an alternative. And that word is used in some of the Virginia Supreme Court case law. But what they do, that it's an alternative that's available when vicarious liability is not. That's true. Those cases are saying that even if you can't get to the employer through vicarious liability, you can still get to them through negligent hiring under an appropriate set of facts. It's another avenue to get there. What they require the court to do is go back and edit all of those opinions from the Supreme Court and insert the word only. They require the court to come in and say that vicarious, that negligent hiring is a claim that's only available when vicarious liability is not. There is not a single Supreme Court of Virginia case that says that. So, yes, it is a claim that's available when vicarious liability is not. That is a true statement. But it's not a claim that's only available. It's not a mutually exclusive claim. I'm sorry to interrupt you, but do you have a case where the employee was acting within the scope of his employment and was found not negligent under a negligence claim, but the jury nevertheless found liability based on negligent hiring? Is there such a case? In Virginia, no. I do not have such a case. I know that there are courts from other states that have said that that's possible. One has cited our brief from the District of New Hampshire that it's possible for that to exist. And I think, again, because it goes back to the prospective look that the jury is doing, we have no idea what the jury would have found if they had heard all of the evidence. What Judge Moon was thinking about when he decided he wasn't going to give them that opportunity. That's not what he said. All I'm attacking, all I'm here on, all I can argue is what he said. And his ruling, as Judge Flanagan points out, is just an incorrect interpretation of Virginia law. He didn't make a, what you're positing, Your Honor, I think is more like a 403 type analysis of it's just too inflammatory. And if he wants to make that ruling, we can deal with that on it's merits. But that's not what he did. That's what they were asking. That's kind of what they were asking him to do. But he specifically declined the opportunity to do that. And I think that's telling. So, unless the court has any further questions, we ask that the court reverse on Mr. Napier to allow the jury to fully determine, fully and fairly determine Mr. Worthy's negligence. And we ask the court also reverse on the negligent hiring claim because it is an independent, distinct, and legally viable cause of action in Virginia that's not derivative of or contingent upon the employee's negligence. Thank you. Thank you, counsel. We very much appreciate the excellent arguments of counsel in this case. We will come down and greet you and adjourn until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, Robert B. King, Louise W. Flanagan